IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NAOMI KIMBERLY HEATER,

Petitioner, No. CIV S-02-0689 MCE DAD P

vs.

GLORIA HENRY, Warden, et al.,

Respondents. FINDINGS & RECOMMENDATIONS

_____________________________/

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges her 1999 conviction on charges of special circumstance first degree murder, assault with a firearm, assault with a deadly weapon, and attempted first degree robbery, with an enhancement for having personally used a firearm in the commission of the crimes. She seeks relief on the grounds that: (1) her convictions for attempted robbery and felony murder and the robbery-murder special circumstance are not supported by sufficient evidence; and (2) the jury was not adequately instructed on the special circumstance allegation. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

PROCEDURAL BACKGROUND

On March 10, 1999, a complaint was filed in the Sacramento Superior and Municipal Court charging petitioner with murder by personal use of a firearm, in violation of California Penal Code § 187(a), with the special circumstance that the murder was committed while petitioner was engaged in the commission or attempted commission of the crime of robbery, within the meaning of California Penal Code § 190.2(a) (17) (count one). (Clerk's Transcript on Appeal (CT) at 33-36.) The complaint also charged petitioner with assault with a firearm, in violation of California Penal Code § 245(a) (2) (count two); assault with a deadly weapon other than a firearm (a frying pan), in violation of California Penal Code § 245(a) (1) (count three); and robbery, in violation of California Penal Code § 211 (count four). (Id.)

After a jury trial, petitioner was convicted of first degree murder; two counts of assault with a deadly weapon; and one count of attempted robbery, a lesser included offense of the crime of robbery. (Answer, Ex. A.) The jury found the robbery-murder special circumstance allegation to be true and also found that petitioner personally used a firearm in connection with the crimes charges in counts one, two and four. (Id.) On December 21, 1999, petitioner was sentenced to state prison for 24 years plus a consecutive indeterminate term of life without the possibility of parole. (Reporter's Transcript on Appeal (RT) at 438-441.)[1]

The California Court of Appeal for the Third Appellate District affirmed petitioner's judgment of conviction in an unpublished decision dated March 12, 2001. (Opinion of the Third District Court of Appeal – Filed 3/12/2001[2]; Answer Ex. B.) On April 18, 2001, petitioner filed a petition for review in the California Supreme Court. (Petition for Review of Naomi Kimberly Heater.) That petition was summarily denied on June 19, 2001. (Petition for

---

[1] Petitioner was also sentenced to pay a restitution fine of $10,400, which was reduced on appeal to $10,000. (Opinion of the Third District Court of Appeal - Filed 3/12/2001 (hereinafter Opinion), lodged in support of respondents' answer on August 14, 2002.)

[2] The documents referred to in this manner were so-titled by respondent and were lodged with this court on August 14, 2002.

Review denial letter from California Supreme Court – Filed 6/13/2001.) Petitioner filed this federal habeas action on April 1, 2002.

FACTUAL BACKGROUND[3]

> Viewed in the light most favorable to the judgment (People v. Carpenter (1997) 15 Cal.4th 312, 387), the evidence is as follows.
>
> On July 5, 1998, 63-year-old Parker Allen and his 70-year-old wife, Toshiko Allen, lived in North Highlands.[4] Defendant, their only child, lived in downtown Sacramento. The Allens adopted defendant when she was eight months old.
>
> In 1991, the Allens purchased a new Toyota pickup truck for defendant to use in commuting to work, on the condition that she repay them the purchase price without interest. The truck was registered to defendant and Parker; Parker paid for its insurance. After defendant made several payments, she returned the truck to the Allens saying she could not afford it. From time to time thereafter, they allowed her to use the truck when she needed it. However, about a week before the present offenses, she borrowed the truck and they had trouble getting it back. When they went to her residence to obtain the truck, she told them it was out being washed. Defendant left the apartment but the Allens stayed. Eventually, a girl brought the truck to the apartment and the Allens took possession of it. The truck had not been washed.
>
> On July 5, 1998, at about 9:30 a.m., Parker overheard a conversation between defendant and Toshiko in a nearby room. After that, he heard what sounded like a firecracker, followed by his wife's single scream and then two loud moaning noises. Parker went to see what had occurred. He saw defendant in the hallway and asked her what had happened. Without responding, she shot him in the left arm. The bullet broke a bone and exited from the rear of the arm, causing blood to gush from it. Defendant then walked closer to Parker, placed the pistol about six inches from his chest, and pulled the trigger. However, the weapon did not fire. Parker, now worried about Toshiko, ran into the kitchen. Defendant grabbed a cast iron skillet and struck Parker in the back and in the head. While defendant fiddled with the malfunctioning pistol, Parker asked her "what have you done," and stated that "you have ruined your life." When asked about her mother, defendant told Parker that she was upstairs and tied up. Defendant held the gun on Parker and locked him in a downstairs closet. Then she

---

[3] The following summary is drawn from the Opinion of the California Court of Appeal at pgs. 2-7.

[4] To avoid confusion, we shall occasionally refer to the Allens by their first names.

nailed a board across the closed door and placed furniture against the door. Defendant repeatedly asked Parker for the personal identification numbers he used with his credit cards. He could hear her ransacking different parts of the house, including the family financial records. Finally, Parker, who had intervals of unconsciousness, kicked his way out of the closet. Because defendant had disabled the telephone line, Parker was not able to call 911 until about 12:55 p.m. After law enforcement arrived, he was taken to the U.C. Davis Medical Center. Parker determined that defendant had taken the family's 1992 Honda sedan.

Michael Setser and Gregory Hurd are neighbors of defendant. On the day that the Allens reclaimed the pickup truck from defendant, Setser saw the Allens and defendant engaged in a screaming argument about the matter. The same day, defendant told Setser that she was going to "get even for her parents taking the truck back." Later, on the evening of July 4, 1998, defendant showed him a pistol and stated she felt "like she wanted to shoot somebody." The next day, July 5, Setser saw defendant coming from the apartment complex parking lot; she had arrived in her parents' sedan.

Hurd saw defendant on July 5 during the day. She told him that she "had used . . . her nine millimeter," that it was out in the car, that she had shot her parents, and that "now two people are dead." Hurd later was contacted by police and evidently directed them to defendant's apartment.

Defendant was taken into custody at her apartment. She told police that her gun, a nine-millimeter Lorcin automatic, was in a Honda that was parked near the apartment complex. Search of the Honda yielded the gun, a bloody denim shirt, and the Allens' checkbooks and credit cards. Search of defendant's apartment yielded the key to the Honda. Examination of the gun revealed that an expended cartridge casing was jammed in the chamber. The gun had a "medium" trigger pull for that type of firearm.

An autopsy showed that Toshiko died of a gunshot to the chest that severed her aorta.

Defendant waived her constitutional rights and made a lengthy statement to homicide detectives. She stated that she had a "crank" habit and that she had "done a little" the night before the offenses. She claimed the gun had been given to her "to hold" by a person she refused to identify. On the morning of July 5, 1998, she and "Johnny" left her apartment to go to her parents' residence. Her "main purpose for going there was to convince [her] parents to let [her] have the truck back." She had the gun, knew there were two bullets in the clip, and intended to "scare" her mother with the weapon. She took the gun with her "because [she] wanted to make sure [she] got [her] truck back." At a gas station, defendant

> inserted the ammunition clip into the weapon. En route to the Allen residence, Johnny asked defendant what she was going to do, and she discussed her possession of the gun. She told him, "I want my truck," and that she needed a gun to intimidate or persuade her mother into letting her have it. Once at her parents' residence, defendant got in an argument with Toshiko. Defendant asked for the truck and Toshiko said no. Toshiko told defendant that she needed to leave and took her to the door. At that point, defendant pulled the gun out of her waistband. She began fumbling with the bullets, repeatedly picking them up off the floor and placing them back in the weapon. Although she knew that the weapon was loaded with live ammunition, although she had the weapon pointed at Toshiko, and although she deliberately pulled the trigger, she nevertheless claimed that she had no intent to shoot or hurt Toshiko. Rather, she "trusted" the safety on the firearm. Defendant claimed her only intent was to "pretend like [she was] gonna pull the trigger," that Toshiko will "be intimidated," that Toshiko will "give [her] the truck," and that "[she will] go home." Defendant claimed she did not intend to shoot Toshiko and did not realize she had in fact shot her until Toshiko screamed. Defendant then dragged the body behind a couch and covered it with a rug. When Parker appeared, she was still holding the gun. She had worked the slide of the gun so that another round was in the firing chamber; she thus knew that the gun was loaded. When Parker began asking where Toshiko was, defendant shot him only in order to scare him. Defendant's preference was that Parker stay there, and not begin looking around for Toshiko. Defendant then locked Parker in the closet, tried to clean up, and left in the Allens' Honda. She absconded with various items of their property, including their checkbooks, and later tried to use their ATM card.
>
> Defendant testified on her own behalf as the only defense witness. Her testimony was generally similar to her statement to detectives. Her defense was that she lacked intent to kill, and that the murder was not deliberate or premeditated.

## ANALYSIS

### I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)). See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). See also Henry, 197 F.3d at 1031; Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) as amended by the AEDPA, sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

/////

/////

II. Sufficiency of the Evidence

Petitioner's first claim is that "the evidence was insufficient to support the conviction for attempted robbery and felony murder and the finding of the robbery special circumstance." (Pet. at 5.) Specifically, petitioner argues there was insufficient evidence that she intended to "permanently deprive her parents of the truck." (Id.) She explains that she only intended to take the truck temporarily "to use as she had done before." (Id.) She argues that "the fact [she] did not take the truck after the incident and did not kill her father who would know she had taken the truck supports the finding she did not intend to steal the truck." (Id.) Petitioner also contends that if this court finds the evidence was insufficient to support her conviction for attempted robbery and the robbery special circumstance, her conviction for first degree murder should also be set aside because "there is affirmative evidence in the record to show a reasonable probability the first degree murder conviction was based on felony murder and not on a premeditated and deliberated murder." (Id.)

The California Court of Appeal rejected petitioner's argument in this regard, stating the following:

> Robbery is the taking of personal property from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property. (§ 211; People v. Marshall (1997) 15 Cal.4th 1, 34.) Robbery requires intent to steal before or during the application of force, rather than after its application. (Rodriguez v. Superior Court (1984) 159 Cal.App.3d 821, 826-827.) The robbery-murder special circumstance requires that the murder was committed "while the defendant was engaged in . . . the . . . attempted commission of" the robbery. (§190.2, subd.(a) (17) (A).)
>
> In this case, there was evidence that defendant had talked of "getting even" with her parents for reclaiming the pickup truck and had talked of "shooting somebody." She admitted to police that she intended to obtain the truck from her parents by means of fear. She acknowledged that her "main purpose for going" to their residence "was to convince [her] parents to let [her] have the truck back." She took the gun with her "because [she] wanted to make sure [she] was going to get [her] truck back." She admitted that she intended to "scare" Toshiko with the gun. Defendant stated that she planned to "pretend like [she was] gonna pull the trigger,"

> that Toshiko will "be intimidated," that Toshiko will "give [her] the truck," and that "[she will] go home." This is more than sufficient evidence that defendant intended to steal the truck when she went to her parents' house.
>
> Contrary to defendant's argument, the jury was not required to speculate that she intended to obtain the truck for only a limited time. Rather, reasonable jurors could deduce from her pointing a loaded gun at Toshiko that she was willing to forfeit any prospect of being allowed to "borrow" the truck as she had in the past. Jurors could thus deduce that she intended the present taking to be permanent. Whether she had the means to effect a permanent taking, i.e., whether her threat to kill Toshiko was likely to intimidate Parker sufficiently to dissuade him from asserting his legal rights as co-owner of the truck, is not determinative of her desire or intent to effect such a taking. Were it otherwise, any robber could defeat a robbery charge by claiming that he or she was not likely to get away with it.
>
> Defendant's reliance upon her cryptic trial testimony that she intended to "bring the truck manuals" to her parents' house is misplaced. While defendant's intent in that regard is less than clear, reasonable jurors could infer that she presented the manuals to Toshiko in order to induce her to consent to defendant's ensuing request to take the truck. When that did not succeed, defendant threatened Toshiko's life by pointing the loaded gun at her. The jury was not required to speculate that defendant ultimately intended to reunite the truck with the manuals at her parents' residence.
>
> Nor was the jury required to attach significance to the fact that defendant departed from the Allens' residence in their Honda and not in the truck. She made plain her intent to take the truck by means of fear. Why she failed to act on that intent, and why she stole other items that she had not planned to take, is not determinative of her intent at the time of the murder. The attempted robbery conviction and the robbery special circumstance are supported by sufficient evidence.

(Opinion at 9-10.)

There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). "Put another way, the dispositive question under Jackson is 'whether the record evidence could

reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).[5] The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. 307, 324 n.16; Chein, 373 F.3d at 983.

The state court decision rejecting petitioner's sufficiency of the evidence claim is not contrary to federal law as set forth above and should not be set aside. The legal standard applied by the state court is consistent with the federal standard set forth in Jackson and the decision of the state court was not based on an unreasonable determination of the facts. As explained by the California Court of Appeal, the evidence regarding the circumstances of the crime was more than sufficient to support that jury's conclusion that petitioner intended to permanently deprive her parents of the truck. Petitioner brought a loaded gun to her parents' house, demanded the truck, and shot both parents when her mother refused to surrender the vehicle. Petitioner's behavior was simply not consistent with that of a person who only intended to borrow the truck temporarily. Under the facts presented at trial, a reasonable jury could have

---

[5] The Ninth Circuit Court of Appeals has declined to consider the question of whether the AEDPA requires an additional degree of deference to state courts' resolution of sufficiency of the evidence claims. See Bruce v. Terhune, 376 F.3d 950, 956 (9th Cir. 2004); Chein, 373 F.3d at 983. Because petitioner's claim fails under the Jackson standard this court also need not decide whether the enactment of the AEDPA altered that test for purposes of federal habeas proceedings.

found beyond a reasonable doubt that petitioner was guilty of attempted robbery and that she committed the murder in the attempted commission of a robbery, as that crime is defined under California law. Accordingly, petitioner is not entitled to relief on her claim that the evidence presented at her trial was insufficient to support her conviction for attempted robbery and felony murder and the finding of the robbery special circumstance.

III. Jury Instruction Error

Petitioner claims that the jury's robbery-murder special circumstance finding must be vacated because the trial court failed to instruct the jury that the special circumstance would not apply if the robbery was merely incidental to the commission of the murder. (Pet. at 5-6.) In this regard, petitioner asserts that she and Toshiko were discussing "how her mother had not protected her as a child when her father abused her," and that the gun "accidentally discharged" during that conversation. (Id. at 6.) She argues that the jury may have found the shooting was accidental and/or incidental to this tense conversation with her mother and was not committed in order to carry out or advance the commission of the robbery. Petitioner contends that, under these circumstances, the trial court's failure to so instruct the jurors prevented them from "finding the special circumstance to be not true." (Id.)

The California Court of Appeal rejected this argument as well based upon the following reasoning:

> The trial court instructed the jury with a modified form of CALJIC No. 8.81.17, as follows: "To find the special circumstance referred to in these instructions as murder in the commission of robbery or attempted robbery is true, it must be proved: [¶] 1a. The murder was committed while the defendant was in the commission or attempted commission of a robbery."
>
> A second part of CALJIC No. 8.81.17, omitted from this case without objection, would have provided: "2. The murder was committed in order to carry out or advance the commission of the crime of [robbery] or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the [attempted] [robbery] was merely incidental to the commission of the murder." (See People v. Morris (1988) 46 Cal.3d 1, 21, disapproved on other

grounds in In re Sassounian (1995) 9 Cal.4th 535, 543, fn. 5.)

The omitted portion of CALJIC No. 8.81.17 does not describe an element of the robbery special circumstance and need not be given where there is no substantial evidence that the attempted robbery of the truck was merely incidental to the murder. (People v. Kimble (1988) 44 Cal.3d 480, 501.)

Defendant concedes that there was "no strong motive" for her to kill Toshiko. However, she claims her poor relationship with Toshiko and their argument shortly before the killing could support a finding that the murder was committed because of anger and not to further the robbery. We disagree. There was no substantial evidence that defendant acted merely out of anger at her parents and not out of any desire to reclaim the truck. Nor was there any evidence that reclaiming the truck would advance the murder or would facilitate defendant's escape from the murder scene in a way that taking the Honda would not.

Defendant claims the omitted portion of the instruction prevented the jury from properly evaluating her testimony that the shooting of her mother was accidental. She reasons that, if the killing were accidental, the jury would not have found that the killing was committed to carry out or advance the robbery. However, the jury was instructed that, "If you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true." (CALJIC No. 8.80.1 (1997 Revision); see People v. Anderson (1987) 43 Cal.3d 1104, 1143.) Under this instruction, the special circumstance may be found true even though the killing is unintentional or accidental. (E.g., People v. Parnell (1993) 16 Cal.App.4th 862, 874.)[6] Defendant does not claim that CALJIC No. 8.80.1 is erroneous or was not properly given in this case. In light of CALJIC No. 8.80.1, it is not reasonably likely that jurors would have understood the second paragraph of CALJIC No. 8.81.17 to mean that an unintentional or accidental killing does not support the special circumstance. (People v. Clair (1992) 2 Cal.4th 629, 663; People v. Kelly (1992) 1 Cal.4th 495, 525-526.)

(Opinion at 10-12.)

/////

---

[6] We note that the omitted portion of CALJIC No. 8.81.17 is based on authority (People v. Green (1980) 27 Cal.3d 1; People v. Thompson, (1980) 27 Cal.3d 303) that predates Anderson, supra, 43 Cal.3d 1104. Anderson holds that intent to kill is not an element of a felony-murder special circumstance. (Id., at pp. 1138-48, overruling Carlos v. Superior Court (1983) 35 Cal.3d 131.)

In general, a challenge to jury instructions does not state a federal constitutional claim. See Middleton, 768 F.2d at 1085 (citing Engle, 456 U.S. at 119); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). In order to warrant federal habeas relief, a challenged jury instructions "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail on such a claim petitioner must demonstrate "that an erroneous instruction'so infected the entire trial that the resulting conviction violates due process.'" Prantil, 843 F.2d at 317 (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)). See also Estelle, 502 U.S. at 72. In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Where the challenge is to a refusal or failure to give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). See also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

Here, petitioner has failed to meet her heavy burden to show that the trial court's failure to give the second part of CALJIC No. 8.81.71 rendered her trial fundamentally unfair. The California Court of Appeal found no "substantial" evidence that petitioner killed her mother solely because of anger and not out of an attempt to further the robbery. This conclusion is a reasonable interpretation of the evidence presented at trial in this case. Notwithstanding petitioner's self-serving testimony to the contrary, the evidence produced at petitioner's trial, when viewed as a whole, leads to the inescapable conclusion that petitioner went to her parents' house for the purpose of obtaining the truck, by force if necessary, and that she shot her mother because she refused to relinquish it. Under these circumstances, the trial court did not act

/////

improperly in failing to inform the jury that the special circumstance did not apply if the robbery was merely incidental to the murder.

In addition, the conclusion of the state appellate court that the jury in petitioner's case was not prevented from accepting her testimony that the shooting was accidental is a reasonable interpretation of the facts of this case. Under the instructions given, particularly CALJIC No. 8.80.1, the jury could have found the special circumstance true even if they believed petitioner's testimony that the shooting was accidental. Given the evidence presented at petitioner's trial, the jury instructions as given properly defined the robbery-murder special circumstance under California law. Accordingly, there was no federal constitutional violation resulting from the trial court's failure, without objection, to instruct the jury with the second part of CALJIC No. 8.81.17.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 6, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
heater689.hc